IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| KAREN SLOAN-BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:20-cv-01108 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| MEHARRY MEDICAL COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

In this case, Plaintiff sued Defendant, her former employer, via a complaint (Doc. No. 1, "Complaint") that contains four counts. In Count I, Plaintiff asserts Defendant violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), *et seq.*, because it failed to pay Plaintiff, a female, what it paid a male co-worker even though (according to Plaintiff) Defendant was required to do so based on a comparison of their jobs. In Count II, Plaintiff alleges that she suffered retaliation in violation of the EPA. In Count III, Plaintiff alleges sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* And in Count IV, Plaintiff alleges retaliation in violation of Title VII.

Now pending is "Defendant's Motion for Summary Judgment" (Doc. No. 25, "Motion"), whereby the sole defendant seeks summary judgment on all claims. Defendant has filed a memorandum in support of the Motion (Doc. No. 26) and various materials in support of the Motion, Plaintiff has filed a response in opposition to the Motion (Doc. No. 30) and various materials in support of her opposition, to which Defendant filed a reply (Doc. No. 31). For the reasons set forth herein, the Motion will be GRANTED IN PART AND DENIED IN PART.

## I.  Introductory Remarks

In setting forth what facts it is treating as undisputed, the Court wishes to make some observations about the under-analyzed notion of when allegations of personal knowledge are insufficient. This matters here because Plaintiff denies certain facts asserted by Defendant based solely on statements of Plaintiff made in her declaration (Doc. No. 30-2) that directly contradict the existence of those facts. The problem is that those statements of Plaintiff are not supported by any assertions of factual matter that either suggests that those statements are based on personal

---

[1] The facts set forth in this section are undisputed, the term the Court will use to describe both facts that are not in dispute *at all* and facts that are not in *genuine* dispute. Some of these facts come from "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts" (Doc. No. 30-5), wherein they are not disputed by Plaintiff in response to Defendant's assertion of them; as to some of these, the Court deems them undisputed because Plaintiff claimed to be without knowledge or information sufficient to admit or deny such facts, which both flouts this Court's local rules and amounts to an admission as noted most commonly by Courts within the Seventh Circuit. *See* LR56.01 (providing that a response to each fact asserted by the summary-judgment movant to be undisputed must be in one of three forms, none of which is to the effect of "unable to admit or deny"); *Karazanos v. Madison Two Assocs.,* 147 F.3d 624, 626 (7th Cir. 1998) (stating that a non-moving party's response that it is without knowledge or information sufficient to admit or deny an asserted fact constitutes an "equivocation [that] is an admission, not a denial."); *Knowles v. Trans Union LLC*, No. 03 C 4952, 2005 WL 3159363, at *2 (N.D. Ill. Nov. 21, 2005) ("Precedent teaches that responses such as 'without knowledge or information sufficient to admit or deny' are unacceptable at the summary judgment stage."); *Williams v. Elyea*, 163 F. Supp. 2d 992, 994 (N.D. Ill. 2001). Other facts herein come from the deposition of Plaintiff and are cited (as being accurate) by Defendant in its briefing. Other facts (background, uncontroversial ones) are mutually stated in the parties' opposing briefing. Others come from the deposition testimony of an employee of Defendant and are cited (as being accurate) by Plaintiff.

Moreover, as discussed elsewhere, the Court treats certain facts as undisputed because Plaintiff has cited only her own statement—which makes a wholly conclusory denial of these facts—in her own declaration to deny those facts, and Plaintiff's declaration does not adequately show that she has personal knowledge to support her (wholly conclusory) statement of denial. The Court also notes that it is overlooking the fact that Plaintiff's declaration fails to comply with the letter (if not the spirit) of the requirements of 28 U.S.C. § 1746 for a proper declaration.

There are other purported facts that are not undisputed but are evidentially supported and are asserted by Plaintiff and Defendant, respectively, to support their respective views that there is (according to Plaintiff) or is not (according to Defendant) a genuine issue of material fact as to a particular claim. The Court refers to these purported facts, and the evidence supporting them, in appropriate places in its analysis below.

knowledge or otherwise support those statements. Plaintiff instead appears to rely on the wholly conclusory assertion at the beginning of her Declaration that the facts set forth therein are "based on [her] personal knowledge." (Doc. No. 30-2 at 1).

*PNY Techs., Inc. v. Samsung Elec. Co.*, No. 10-4587, 2011 WL 1630856, at *3 (D.N.J. Apr. 29, 2011) (rejecting a declaration affidavit that made a conclusory assertion of personal knowledge without providing any basis upon which the court could conclude that the declarant had personal knowledge of the facts declared); *Rosenfeld v. U.S. Dep't of Just.*, No. C 07-03240 MHP, 2008 WL 3925633, at *12 (N.D. Cal. Aug. 22, 2008) ("The court is concerned about Hardy's conclusory assertion of personal knowledge [in Hardy's declaration]. Indeed, the declaration merely makes a . . . conclusion without specifying how this personal knowledge was acquired . . . . For future declarations submitted by Hardy, the court seeks further explanation regarding the basis for his purported personal knowledge."). *Cf. Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 4458890, at *3 (N.D. Cal. May 4, 2020) (sustaining the defendant's objection to the introduction of each of two exhibits on motion for summary judgment because the plaintiff's "conclusory assertion of personal knowledge" was insufficient to "support a finding that the item is what the proponent claims it is," as required to authenticate exhibits for their admission under Fed. R. Evid. 901(a) (internal quotation marks omitted)). As explained in *PNY Techs.* in rejecting a declaration of a Ms. Stuto:

> The Stuto declaration does not meet the requirements of Federal Rule of Civil Procedure 56(c)(4), which states:
>
>> An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Ms. Stuto begins her declaration with the conclusory assertion that she has personal knowledge of the facts therein. (Stuto Dec. ¶ 1.) Ms. Stuto presents no basis for this conclusion . . . .

This Court finds nothing in the Stuto declaration from which to conclude that Ms. Stuto has personal knowledge of the facts stated therein, nor that she would be competent to testify as to any of the facts asserted. The Court may reject an affidavit that fails to meet the personal knowledge requirement of Federal Rule of Civil Procedure 56(c)(4). *Aronson v. Peoples Natural Gas Co.,* 180 F.3d 558, 564 n. 2 (3d Cir.1999).

*PNY Techs., Inc. v. Samsung Elecs. Co.*, No. CIV.A. 10-4587 SRC, 2011 WL 1630856, at

*3 (D.N.J. Apr. 29, 2011). Plaintiff's Declaration suffers from the same flaw in those places where

it makes a statement that is made (and elsewhere invoked by Plaintiff) to diametrically oppose one

or more particular factual assertions of Defendant. With respect to each such statement,[2] there is

no indication of how Plaintiff gained personal knowledge of the facts stated. This is especially

problematic because in each such instance, there is no basis for merely assuming that Plaintiff (or

anyone in Plaintiff's position) would have personal knowledge of the stated facts. Each instance

is about what someone else did or was responsible for, which is something about which Plaintiff

cannot be presumed to have personal knowledge. And the Court's confidence that Plaintiff has a

---

[2] The statements are those in the Declaration's (Doc. No. 30-2) paragraph 6 (which is diametrically opposed to Defendant's factual assertion that "Franklin Nouvet oversaw the drafting of all the Standard Operating Procedures ("SOP") for all the equipment in CRISALIS" (Doc. No. 30-5 at 4)) and paragraph 7 (which is diametrically opposed to Defendant's factual assertion that "Nouvet was provided access to each of the RCMI sub-score accounts for the CRISALIS Core" (*id.*)). Those statements have not been adequately shown to have been made on personally knowledge, and thus they must be disregarded.

In denying the former assertion of Defendant ("Franklin Nouvet oversaw the drafting of all the Standard Operating Procedures ('SOP') for all the equipment in CRISALIS"), Plaintiff also relies on the statement in paragraph 5 of her Declaration, but that statement actually does not adequately serve to refute this assertion from Defendant, as Defendant specifically has stated it. Likewise, in denying the latter assertion of Defendant (that "Nouvet was provided access to each of the RCMI sub-score accounts for the CRISALIS Core"), Plaintiff also relies on the statement in paragraph 8 of her declaration, but (as before) that statement actually does not adequately serve to refute this assertion from Defendant, as Defendant specifically has stated it.

For these reasons, Plaintiff's denials of these two asserts are ineffective, and the Court treats as undisputed the facts thus asserted, without further explaining such treatment below.

basis for her denial in these instances is not helped by the fact that a person who *would* have personal knowledge regarding these matters (Frank Nouvet) has testified to facts inconsistent with Plaintiff's denials. (Doc. No. 31-2).

## II.    Comparison of Job Duties of Plaintiff and Franklin Nouvet[3]

The Court begins by setting forth the respective positions of Plaintiff and her purported male comparator, Franklin Nouvet. It does so by first discussing Plaintiff's position, then discussing Nouvet's position, and then returning to Plaintiff's position very briefly to contrast it with Nouvet's position in one particular respect.

Plaintiff is a former Lab Coordinator at Meharry Medical College, Defendant herein. She was employed in the Molecular Biology Core and later worked in the CRISALIS Core after the merger of the Molecular Biology Core (along with several other cores) into the CRISALIS Core facility.

Plaintiff was responsible to some extent for moving the Molecular Biology equipment from the Molecular Biology Core to the CRISALIS Core.[4] But Plaintiff was not responsible for ensuring that all equipment from each of the other four (4) remaining cores were moved to the CRISALIS Core. Plaintiff was responsible for preparing Standard Operating Procedures ("SOPs") for laboratory equipment in the Molecular Biology Core. But Plaintiff was not responsible for

---

[3] The Court notes additionally that its description herein of the duties and activities are duties and activities *of the particular positions* filled respectively by Plaintiff and Nouvet; there is no suggestion from either side that there must be some filtering of such duties and activities to determine which of them were actually associated with the two respective positions that Plaintiff asks this Court to compare (Plaintiff's job and Nouvet's job) rather than being duties or activities that were unauthorized by Defendant or otherwise not within the scope of the positions being compared.

[4] The parties dispute whether (as Plaintiff claims) she had primary responsibility for this, with assistance from Franklin Nouvet if needed, or whether instead (as Defendant claims) Plaintiff was responsible merely for "helping" Nouvet to do this. Plaintiff admits that she was not responsible for ensuring that all equipment from each of the other four (4) remaining cores were moved to the CRISALIS Core.

developing SOPs for equipment that was not part of the Molecular Biology Core. Plaintiff was not responsible for developing, implementing, and systematizing a cost recovery system to monitor and track equipment usage and service fees for all the equipment in the CRISALIS Core. Plaintiff was never responsible for processing budgets, billing, and charges for the CRISALIS Core, an integrated facility comprised of five formerly separate laboratories.[5]

Plaintiff was not responsible for supervising employees. Plaintiff was not responsible for directly participating in the writing or submission of a grant. And she was not responsible for establishing daily tasks or reviewing and approving time sheets. Plaintiff was not responsible for meeting with Dr. Lima on a weekly basis to update her on the progress of the move of equipment to the new CRISALIS Core. Plaintiff did not participate in Core Director meetings, except for one special joint meeting held between staff and Directors.

Plaintiff was under the Department of Microbiology and Immunology. Plaintiff was supervised by Dr. Robert Holt and Dr. Josiah Ochieng.

Nouvet served as Business Manager of the CRISALIS Core.[6] Nouvet received a salary that was significantly higher than that of Plaintiff. He was charged with the responsibility of overseeing the transfer of all laboratory equipment from each of the five cores to the newly renovated laboratory space that would house the new CRISALIS Core. Nouvet developed a cost recovery

---

[5] Plaintiff purports to deny this statement, but the support for her denial (paragraphs 7 through 10 of her declaration (Doc. No. 30-2)) does not actually serve to contradict this statement as it is written; at best, it provides some context to the statement as written. Moreover, paragraphs 7, 8, and 10 are all about what other people (Nouvet and Setonia Cook) did or did not do, and Plaintiff has failed to adequately aver personal knowledge of what these other people did or did not do. Accordingly, the denial is nugatory and is disregarded by the Court.

[6] In describing what facts are undisputed about Nouvet's job, the Court herein is careful to recognize the distinction between facts about what Nouvet *did* and facts regarding what Nouvet was *responsible for*; this is because Plaintiff says that the distinction is both real and consequential to her EPA claim.

system to log users within the Core and track expenditures. Specifically, he led the implementation and systematization of the use of iLab in the CRISALIS Core. Nouvet also was responsible for contributing to the CRISALIS portion of a grant proposal. Specifically, he read and edited the grant and contributed to the final version submitted to the NIH.

Nouvet also was responsible for the supervision of an employee named Anja Izban. As her supervisor, Nouvet established her daily tasks, instructed her regarding the operation of technical instruments, and reviewed and approved her time sheets.

Nouvet was under the Department of the Office of Research. Plaintiff and Nouvet did not have the same supervisors; Nouvet was supervised by Dr. Maria de Fatima Lima and Dr. Anil Shanker. Nouvet was responsible for meeting with Dr. Lima on a weekly basis to provide her with status updates regarding the move of equipment from their locations at prior cores to the new CRISALIS Core. And Nouvet was the only CRISALIS staff member to attend meetings of the Core Directors.

Additionally, Nouvet was provided access to each of the RCMI sub-score accounts for the CRISALIS Core, whereas Plaintiff was never granted such access and did not hold equivalent responsibility.[7] Nouvet also oversaw the drafting of all the SOPs for all the equipment in CRISALIS. Additionally, Nouvet was provided access to each of the RCMI sub-score accounts for the CRISALIS Core, whereas Plaintiff was never granted such access and did not hold equivalent responsibility.[8]

---

[7] Plaintiff purports to deny this statement, but the cited support for her denial (her statements in paragraphs 7 and 8 of her declaration (Doc. No. 30-2)) has not been shown to be based on her personal knowledge as required. Accordingly, the denial is nugatory and is disregarded by the Court.

[8] Plaintiff purports to dispute Defendant's asserted proposition that Plaintiff was never granted such access and did not hold equivalent responsibility, but the material cited in support of that denial (paragraphs 7 and 8 of her Declaration) actually provides no support for refuting that proposition.

### III.     Complaints About, and Termination and Replacement of, Plaintiff

Dean Lima expressed to Mark Smith (title) that Plaintiff's work performance was unsatisfactory, and that Plaintiff should have been included in a layoff. Additionally, Nouvet made complaints to Smith about Plaintiff. Likewise, Dr. Ochieng complained about Plaintiff's performance to Smith.[9] Smith determined that the allegations of poor performance against Plaintiff were verified.[10] Smith terminated Plaintiff's employment for insubordination and unsatisfactory performance.[11]

---

[9] Plaintiff purports to deny this statement but does so without citing anything to support the denial. (Doc. No. 30-5 at 7). Accordingly, the denial is nugatory and is disregarded by the Court.

[10] Plaintiff purports to deny this statement, but the cited support for her denial (paragraphs 14 through 20 of her Declaration) does not actually serve to contradict this statement as it is written. Each of those seven paragraphs is a statement about what *Plaintiff was or was not told* about her performance (including complaints or concerns regarding her performance); it is easy to reconcile the truth of each of those statements (and their collective implication that Plaintiff was not told of the concerns or complaints of anyone besides Nouvet and that Plaintiff was advised that there were any problems with her performance) with the statement that *Smith* (rightly or wrongfully) determined (at some unspecified point, and not necessarily earlier than sometime in 2019) that the allegations of poor performance against Plaintiff were verified. This is even true of Plaintiff's statement in paragraph 16 that her "*previous supervisor*, Dr. Robert Holt, provided performance evaluations for [her] in *2016, 2017, and 2018*, and [she] earned ratings of 'exceptional' in all of *these* evaluations." (Doc. No. 30-2 at 4). The fact that a supervisor (Holt) provided favorable performance evaluations for three years ending in 2018 does not mean the Vice President of Human Relations (Smith) did not determine at some unspecified juncture that allegations of poor performance against Plaintiff were justified.

[11] Plaintiff purports to deny this statement and ostensibly supports the (purported) denial via another citation to paragraphs 14 through 20 of her Declaration, which the Court has described in the footnote immediately above. But as before, this citation does not actually serve to contradict this statement as it is written. All of the statements in paragraphs 14 through 20 of her Declaration can be true without undermining the possibility that Smith terminated Plaintiff's employment "for insubordination and unsatisfactory performance." The Court notes, however, that it takes the statement as written and that in the Court's view, as written the statement does not necessarily convey the *actual, subjective* reason why Plaintiff was terminated, but rather only the *purported reason*, which is not necessarily the actual reason. So the Court does not treat this (undisputed) statement itself as support for the notion that the purported reason was the actual reason or that the actual reason was Plaintiff's insubordination and unsatisfactory performance; support for such notions must come from elsewhere.

To fill the vacancy left by Plaintiff, Defendant hired Olga Korolkova, a Postdoctoral Research Associate. Ms. Korolkova is female. Ms. Korolkova performs the duties that would have been performed by Plaintiff had she remained.

<u>SUMMARY JUDGMENT STANDARDS</u>

**I.      Summary Judgment Standards, Generally**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. United. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden

by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support the fact" (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 250).[12] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed—i.e., any party seeking summary judgment and any party opposing summary judgment, respectively—can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact, Fed. R. Civ. P. 56(c)(1)(B).

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (citing *Anderson*, 477 U.S. at 248). Likewise, the "court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman*, 901 F.3d at 628 (citing

---

[12] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

A defendant-movant cannot meet its initial burden on motion for summary judgment merely by *claiming* that the plaintiff lacks evidence and essentially challenging the plaintiff to show otherwise. Instead, a defendant-movant must—by pointing to materials of record or otherwise—*show* (presumptively, subject to the plaintiff's response) that the plaintiff could not prove his claim by a preponderance. *See* Fed. R. Civ. P. 56(c)(1).[13] In other words, the defendant-movant must produce evidence *tending to show* (though not necessarily *conclusively showing*) that the plaintiff cannot raise a genuine issue as to any material fact.[14] *Nickols v. Morris*, 705 F. Supp.

---

[13] The Court rejects cases that have indicated otherwise. *See, e.g.*, *O.M.A., S.r.l. v. Simon DeYoung Corp.*, No. 1:10CV0861, 2013 WL 7210503, at *3 (N.D. Ohio Mar. 12, 2013) ("[A summary judgment] movant in federal court is not required to . . . provide evidence to show that his opponent has no evidence"), *R&R adopted in part, rejected in part on other grounds*, No. 1:10 CV 00861, 2014 WL 587171 (N.D. Ohio Feb. 14, 2014); *Goldcorp, Inc. v. United States*, No. 00-75043, 2002 WL 551042, at *6 (E.D. Mich. Mar. 27, 2002) ("At any rate, even if [the] affidavit were altogether stricken from the record, it appears that the Government still would be entitled to summary judgment in its favor. After all, this affidavit has been provided merely to prove a negative: namely, that there is no evidence that the IRS ever received the protective claim allegedly sent by Plaintiff on or before September 15, 1995. Presumably, then, the Government could have simply asserted this proposition in its brief and left it to Plaintiff to introduce evidence calling this issue into question.").

[14] Notably, a defendant-movant typically can show that there is no genuine issue as to any material fact by showing that there is no genuine issue as to the existence of a fact (usually, the element of a claim) that absolutely needs to exist for the plaintiff to prevail. If the defendant-movant can make this showing, all other facts become immaterial (because the plaintiff necessarily will suffer summary judgment anyway),

2d 579, 584–85 (N.D. Tex. 2010) ("The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence which tends to show that no genuine issue as to any material fact exists and that he is entitled to judgment as a matter of law."), *aff'd*, 419 F. App'x 534 (5th Cir. 2011).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## II.     Summary Judgment Standards in the Context of an Indirect-Evidence Theory under *McDonnell Douglas*

The Court here will take a moment (or two) to discuss the so-called *McDonnell Douglas* framework and its applicability to motions for summary judgment in the context of employment-discrimination and retaliation claims in the federal judicial system. The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden-shifting framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to

---

and thus it can be said that the plaintiff (being unable to show a genuine issue as to *one* material fact) cannot raise a genuine issue as to *any* material fact.

the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (some citations omitted).

The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on so-called indirect (i.e., circumstantial) evidence.[15] *Redlin v. Grosse Pointe Pub. Sch. Sys*., 921 F.3d 599, 606–07 (6th Cir. 2019). The undersigned has explained:

> When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . . .
>
> To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas.*
>
> At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff

---

[15] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999)). Indirect evidence is evidence that requires the court to make inferences to conclude that unlawful retaliation or discrimination was a motivator for an adverse employment action.

must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

*Veith v. Tyson Fresh Meat, Inc.*, No. 3:19-CV-01065, 2022 WL 1231229, at *9–10 (M.D. Tenn. Apr. 26, 2022).

If the defendant carries its burden to show a legitimate nondiscriminatory reason, then finally the burden shifts back to the plaintiff to show that the reason offered by the defendant is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802–04 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255–56 (1981). This resulting burden is one of persuasion, and this burden of persuasion (as to pretext) at this stage "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256. In other words, once the burden has shifted back to the plaintiff, the plaintiff must show by a preponderance of the evidence[16] each of two components of pretext: that the defendant's reasons (i) were not its true reasons and (ii) were instead actually a pretext for discrimination. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 661 (6th Cir. 2020). To defeat a summary judgment motion in such circumstances, the plaintiff must produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against him. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001).

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014). "Whichever method the plaintiff employs, he always

---

[16] The "preponderance of the evidence" standard applicable here is the trial standard. At the summary judgment stage, as suggested above, the standard is modified, such that the question becomes whether a reasonable jury *could* make the required finding by a preponderance of the evidence.

bears the burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against him.'" *Clark v. Walgreen Co.*, 424 F. App'x 467, 474 (6th Cir. 2011) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003)).

"The three-part test need not be applied rigidly. Rather, '[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). "Ultimately the plaintiff must produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation of why it fired [or failed to rehire] her.'" *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Chen*, 580 F.3d at 400). The plaintiff "must meet this evidentiary burden by a preponderance of the evidence." *Id.* (citation omitted). If the plaintiff can do so, he meets his burden of showing that the employer's stated reason for the allegedly discriminatory reason was not its true reason.

But something more is required of the plaintiff. That is, the plaintiff must address the second component of pretext, i.e., that the actual reason was discriminatory. That is, as indicated above, "[t]o demonstrate pretext, a plaintiff must show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful."[17] *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (citing first *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993);[18] and then *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

---

[17] The required second component seems to coalesce with the required overall showing that the plaintiff must make to meet his or her overall burden of showing unlawful discrimination. Presumably, this is what the Supreme Court had in mind when it stated that the plaintiff's burden as to pretext "merges" with the plaintiff's overarching burden as to the discrimination claim as a whole. *Burdine*, 450 U.S. at 256.

[18] One might reasonably ask whether *St. Mary's*, which as noted in *Ford Motor Co.* required the plaintiff to show both components, effectively overruled *Burdine* in one respect. Specifically, this aspect of *St.*

148 (2000)).[19] In other words, if the burden has shifted back to the plaintiff, the plaintiff's trial burden would be to show by a preponderance of the evidence that the defendant's reasons were not its true reasons and were instead actually a pretext for retaliation. *Kirilenko-Ison*, 974 F.3d at 661. "To avoid summary judgment, then, the [plaintiff] must present evidence from which a reasonable jury could find that poor performance was not the real reason that [the defendant] terminated [the plaintiff], and that unlawful retaliation in fact was." *Ford Motor Co.*, 782 F.3d at 767. In some cases, the evidence that the defendant's proffered reason was not the real reason serves equally as evidence that the real reason was discriminatory, and vice versa. After all, evidence may suggest that the defendant's proffered (non-discriminatory) reason was not the real reason precisely because it suggests that the real reason was discriminatory; likewise, evidence may suggest that the defendant's proffered (non-discriminatory) reason was discriminatory precisely because it suggests that (suspiciously) the proffered reason was not the real reason. But under Sixth Circuit law, the Court must be mindful to require evidence of both kinds, even if it turns out to all be the same evidence.

---

*Mary's* seems in tension with *Burdine*'s statement that the plaintiff may meet its burden of persuasion as to pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256. The dissent in *St. Mary's* certainly saw the tension. But as far as the undersigned can tell, *Burdine* has never been considered to have been overruled in any respect, and certainly neither the Supreme Court nor the Sixth Circuit has shown any compunction about citing *Burdine* (at least parts of *Burdine* other than the statement apparently displaced by *St. Mary's* as noted above) in the aftermath of *St. Mary's*. The Court is confident at the very least that the aspects of *Burdine* upon which the Court relies remain good law after *St. Mary's*.

[19] One might ask why it is not enough to speak simply in terms of the requirement to show that the real reason was retaliation (the second component of pretext) without mentioning a separate requirement to show that the real reason was not the (non-retaliatory) reason proffered by Defendant (the first component of pretext). After all, the second seems necessarily subsumed in the first. But the Sixth Circuit has articulated these as separate requirements that each must be satisfied, and so the Court will proceed accordingly.

It is worth summarizing in some detail how all of these (variously shifting and conditional) requirements apply in the *summary judgment context* in particular, once the above-referenced principles of summary judgment are applied to the unique framework of indirect-evidence cases under *McDonnell Douglas*. As one court put it, addressing Title VII claims of discrimination, "[a] defendant's summary judgment motion slightly modifies the order of [the various *McDonnell Douglas*] showings." *Sherman v. Fountain Valley Police Dep't*, No. SACV17-2217JVS(DFMX), 2019 WL 4238873, at *7 (C.D. Cal. Apr. 2, 2019) (internal quotation marks omitted).

The Sixth Circuit spoke very helpfully on this topic:

> [W]hen a[ ]discrimination plaintiff bases his case on indirect evidence (i.e., evidence requiring inferences to reach the conclusion that the defendant discriminated against the plaintiff), we apply the burden-shifting framework first set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802–05, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *Rowan,* 360 F.3d at 547; *Town v. Mich. Bell Tel. Co.,* 455 Mich. 688, 568 N.W.2d 64, 67–68 (1997). "On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 661 (6th Cir.[ ]2000) (applying the *McDonnell Douglas* framework to a sex-discrimination claim). Thus, the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.[ ]1996) (applying the *McDonnell Douglas* framework to a disability-discrimination claim). The defendant must then offer admissible evidence of a legitimate, nondiscriminatory reason for its action. *Id.* If the defendant does so, the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination. *Id.* Although the burdens of production shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981).

*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 179 (2009).

It is worth emphasizing some points about what the undersigned perceives to be an under-analyzed topic, namely, the burdens born specifically by a defendant who moves for summary

judgment as to a claim of employment discrimination based on an indirect-evidence theory in particular. As indicated above, the general idea under Rule 56 and the cases interpreting it is that the summary judgment movant bears the initial burden of showing, subject to the non-movant's opportunity to show to the contrary, that the non-movant cannot raise a genuine issue as to a material fact. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) ("The moving party must demonstrate the 'basis for its motion, and identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986))). In the case of a defendant-movant, the defendant-movant thus bears the initial burden of showing, subject to the plaintiff's opportunity for rebuttal, that the plaintiff cannot raise a genuine issue as to one or more elements of the plaintiff's claim(s) as to which summary judgment is sought. But because of the unique nature of the three-step *McDonnell-Douglas* framework and the particular burdens the parties would bear at trial, a defendant-movant's burdens are not so easily understood and are worth clarifying.

As for the first step, as noted above, the Sixth Circuit has stated that "the plaintiff must first submit evidence from which a reasonable jury could conclude that he or she established a prima facie case of discrimination." *Blair*, 505 F.3d at 524. But actually this is true only if the defendant-movant met its initial burden of showing the absence of sufficient evidence for a jury to reach such a conclusion. This is because, as the Sixth Circuit has made clear, the usual obligation of the summary judgment movant to make the initial showing indeed applies to defendant's motions for summary judgment directed at indirect-evidence theories. *E.g.*, *Banks v. Ohio*, No. 94-3866, 1995 WL 118993, at * 2 (6th Cir. Mar. 20, 1995) ("The defendants met their initial burden of showing an absence of evidence to establish a prima facie case by showing that no one was similarly

situated, or treated more favorably than she was."); *Sherman*, 2019 WL 4238873, at *7 (noting that the defendants moving for summary judgment as to claims based on an indirect-evidence theory "have the initial burden to either (1) negate an essential element of [the plaintiff]'s prima facie case or (2) establish a legitimate, nondiscriminatory reason for not promoting [the plaintiff]."); *Qualls v. Regents of Univ. of California*, No. 1:13-CV-00649-LJO, 2015 WL 5604293, at *9 (E.D. Cal. Sept. 23, 2015) (noting that "under *McDonnell Douglas,* Defendants have the initial burden of demonstrating that Plaintiff cannot make a prima facie showing" of a Title VII claim), *order vacated in part on reconsideration on other grounds sub nom. Qualls v. Regents of the Univ. of California*, No. 1:13-CV-00649-LJO-SMS, 2015 WL 6951757 (E.D. Cal. Nov. 10, 2015).[20]

As for the second step, it is worth emphasizing that upon a defendant's motion for summary judgment (just as at trial), if the burden does shift to the defendant-movant to show a legitimate and non-discriminatory reason for its action(s), then that burden is one of mere production. *Brown*, 814 F. App'x at 80 (noting on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). This means that the defendant merely has to offer admissible evidence adequate to support a finding that the defendant-movant had such a reason and does not have to show that no reasonable jury could fail to find that the defendant-movant had such a reason.

---

[20] On reconsideration, the defendants specifically challenged this proposition. The court, though granting the defendants' motion in part on other grounds, specifically declined to disavow this proposition. *Qualls v. Regents of the Univ. of California*, No. 113CV00649LJOSMS, 2015 WL 6951757, at *3 (E.D. Cal. Nov. 10, 2015). And the court noted what this Court is addressing herein: the "complex issues related to the interplay of the summary judgment standard and *McDonnell Douglas.*" *Id.*

As for the third step, it does not appear that the defendant-movant bears any initial burden. That is, the defendant-movant need not make an initial showing that the plaintiff cannot raise a genuine issue as to pretext.[21] The rationale for this, presumably, is that the defendant—by showing evidence of an actual (legitimate and non-discriminatory) reason—in the second step already put the onus back on the plaintiff to raise a genuine issue that the reason was pretextual; thus, the defendant need not specifically attack any claim of pretext in order for the plaintiff to be obligated to present sufficient evidence of pretext. And in the context of summary judgment, sufficient evidence means evidence sufficient for a jury to find pretext by a preponderance of the evidence. *Id.*; *see also Blair*, 505 F.3d at 532 ("[T]o survive summary judgment a plaintiff need only produce enough evidence to . . . rebut, but not disprove, the defendant's proffered rationale.").

In the Court's view, what the summary judgment analysis boils down to, stated as concisely as possible (which, alas, is not particularly concisely), is set forth in the following paragraph.

To obtain summary judgment on Title VII or THRA claims grounded exclusively on the so-called "indirect-evidence" theory, the defendant must either (i) show that there is no genuine issue of material fact as to at least one of the elements of the plaintiff's *prima facie* case (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of that element); *or*, failing that, (ii) (a) make an evidentiary showing[22] that there was a legitimate, nondiscriminatory reason for its alleged actions and then (b) show that there is no genuine issue of material fact as to pretext (such that the defendant necessarily is entitled to judgment as a matter of law based on the absence of pretext). On the other hand, the plaintiff will avoid summary

---

[21] The cases consistently and conspicuously omit any references to any such initial burden for the defendant at the third step of *McDonnell Douglas*.

[22] To be clear, the requirement here is not merely to *articulate* a legitimate reason, but also (as discussed below) to *present evidence* that the articulated legitimate reason was in fact the reason.

judgment if : (i) either (a) the defendant fails to meet its initial burden to show the lack of a genuine issue of material fact as to any or more elements of the plaintiff's indirect-evidence *prima facie* case, *or* (b) the plaintiff presents sufficient evidence to demonstrate a genuine issue of material fact as to any element(s) of such *prima facie* case as to which the defendant met its initial burden to show the lack of a genuine issue of material fact; and (ii) either (a) the defendant cannot make an evidentiary showing of a legitimate, nondiscriminatory reason for its alleged actions, or, if the defendant can make such a showing, (b) the plaintiff demonstrates that there is a genuine issue of material fact as to pretext.[23]

As will be further discussed below, multiple claims of Plaintiff are premised on indirect evidence and thus subject to the *McDonnell Douglas* framework.

ANALYSIS

## I.      Count I: Unequal Pay in Violation of the Equal Pay Act[24]

The EPA provides, in pertinent part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).

---

[23] As indicated below, courts' references to a plaintiff's (conditional) requirement to show "pretext" is actually a (conditional) requirement to show not just pretext (i.e., that the claimed reason was provided to conceal the real reason) but also to show that the real reason was of an unlawful, discriminatory nature.

[24] At the beginning of her response, due to what evidently is a scrivener's error, Plaintiff refers to this as the "Equal Protection Act." (Doc. No. 1). It goes almost without saying that no "Equal Protection Act" is implicated in this case.

The Sixth Circuit has explained:

> The EPA prohibits employers from paying an employee at a rate less than that paid to an employee of the opposite sex for performing equal work. *See* 29 U.S.C. § 206(d)(1). In order to establish a prima facie case of wage discrimination under the EPA, plaintiffs must show that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S. Ct. 2223, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)). Jobs need not be identical in order to be considered "equal work" under the EPA. *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265, & n. 10 (3d Cir.), *cert. denied,* 398 U.S. 905, 90 S. Ct. 1696, 26 L.Ed.2d 64 (1970). Whether a job is substantially equal for purposes of the EPA is determined on a case-by-case basis and "resolved by an overall comparison of the work, not its individual segments." *Odomes v. Nucare, Inc.,* 653 F.2d 246, 250 (6th Cir.[ ]1981) (orderlies and nurse's aides perform substantially equal work).

> "Unlike the showing required under Title VII's disparate treatment theory, proof of discriminatory intent is not required to establish a prima facie case under the Equal Pay Act." *Peters v. City of Shreveport,* 818 F.2d 1148, 1153 (5th Cir.), *cert. denied,* 485 U.S. 930, 108 S. Ct. 1101, 99 L.Ed.2d 264 (1988), *abrogated on other grounds, Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989). "Once the plaintiff establishes a prima facie case, the defendant must 'prove' that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Buntin v. Breathitt County Bd. of Educ.,* 134 F.3d 796, 799 (6th Cir.[ ]1998) (citing *Corning Glass Works,* 417 U.S. at 196, 94 S. Ct. 2223). Because these are affirmative defenses, the defendant bears the burden of proof. *See Corning Glass Works,* 417 U.S. at 197, 94 S. Ct. 2223; *see also EEOC v. Romeo Cmty. Schs.,* 976 F.2d 985, 988 (6th Cir.[ ]1992). The burden shifting under the EPA differs from the Title VII framework, in which a "defendant need only assert a legitimate, non-discriminatory reason for the different treatment afforded the plaintiff as compared to her similarly situated male co-workers," *Buntin,* 134 F.3d at 799 n. 6, at which point the burden shifts back to the plaintiff to show pretext. Under the EPA, however, the plaintiff "never bears the burden of *persuasion* regarding the affirmative defenses." *Id.* at 800 n. 7.

*Beck-Wilson v. Principi*, 441 F.3d 353, 359–60 (6th Cir. 2006). The Court notes that although the

applicable comparison is between the respective work (of the Plaintiff and her comparator) as a

whole, and not of the individual segments of the respective employees' work, an assessment of

overall work necessarily entails an examination of the individual segments; only by understanding the trees (the individual segments) can the Court see the forest (the overall comparison).

"Under the EPA, plaintiff must provide specific evidence of her actual duties to establish she was performing the same job as her male comparators." *Foco v. Freudenberg-NOK Gen. P'ship*, 892 F. Supp. 2d 871, 877 (E.D. Mich. 2012) (citing *Corning Glass Works v. Brennan,* 417 U.S. 188, 195 (1974)), *aff'd*, 549 F. App'x 340 (6th Cir. 2013).

"Jobs need not be identical in order to be considered 'equal work' under the EPA." *Beck–Wilson v. Principi,* 441 F.3d 353, 359 (6th Cir. 2006). In a comparison of jobs for at the *prima facie stage* of an EPA claim, the proper focus is on actual job requirements and duties, rather than job classifications or titles. *Vehar v. Cole Nat. Grp., Inc.*, 251 F. App'x 993, 999 (6th Cir. 2007); *Beck-Wilson*, 441 F.3d at 362. "Because the comparison at the prima facie stage is of the jobs and not the employees, 'only the skills and qualifications actually needed to perform the jobs are considered.'" *Id.* at 363.[25] "Factors like education and experience are considered as a defense to an employer's liability rather than as part of a plaintiff's prima facie case." *Id.*

As the undersigned noted decades ago, and has had many occasions to reiterate since taking the bench, there is a continuum between things (such as, in this case, the respective job duties of two different persons) that runs from them being "the same" (i.e., "identical"), to them being merely "similar," and then to them being "different." Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 70 (1995). And for many

---

[25] From this, it follows that the focus is on the work the employer actual expects the employee to perform— the duties actually involved—even if such expectations differ from the expectations purported by a formal job description. *Boaz v. Fed. Exp. Corp.*, 107 F. Supp. 3d 861, 880 (W.D. Tenn. 2015) ("The EPA looks to the similarity of the actual duties involved instead of job classifications or titles." (citing 29 C.F.R. § 1620.13(e))), *aff'd sub nom. Boaz v. FedEx Customer Info. Servs., Inc*., 668 F. App'x 152 (6th Cir. 2016).

On the other hand, the Court has little trouble concluding that a formal job description can be evidence of what duties the employer expects the employee to perform.

comparisons between two things, the specific location on the continuum is a subjective determination that is in the eye of the beholder. *See id.* Experience unquestionably shows that reasonable people often can and do disagree among each other about whether two compared items are "the same"/"identical," or "similar," or "different." But if the beholder is a court making a determination in a particular case, the court must make that subjective call, calling it like it sees it; the court cannot do otherwise.

The EPA implicates these concepts, albeit with some variation given the specific below-discussed terminology of the standard(s) courts use for evaluating a *prima facie* case under the EPA. Notably, such terminology does not include "identical" or "same," and although it does include "similar," "similar" is not a term used in the *primary* articulation of the standard. Instead, according to the Sixth Circuit, the applicable concept is "equal work"—as specifically contrastable with "identical jobs"—although, frustratingly, the Sixth Circuit has at the same time indicated that the applicable concept is "*substantially* equal" jobs. *Beck-Wilson*, 441 F.3d at 359 (emphasis added). In the view of the undersigned, whether two persons perform "equal work" is not self-evidently the same issue as whether they have "substantially equal jobs." And yet the undersigned must harmonize these standards in his own mind in order to apply a unitary standard. So doing, he perceives that he must decline to recognize any distinction between a particular "job" and particular "work"; that is, he must treat the respective employees' particular "jobs" as being co-terminous (and synonymous) with the particular "work" that they do. Indeed, *Beck-Wilson* seems to treat "work" and "job[s]" synonymously. And to reconcile the distinction between "equal" and "substantially equal," the undersigned will treat the standard as closer to "substantially equal"; that means that he will look primarily for exact "equal[ity,]" (whatever that is) and yet allow a certain degree—an "[in]substantial" degree (whatever that is)—of variance from exact "equality" before

determining that the standard has not been met. The application of such a standard, it bears emphasizing, is extremely subjective and, in some cases, eminently debatable. In this case, however, the Court, calling it like it sees it, is confident that the standard has not been met and that therefore Plaintiff has failed to establish a *prima facie* case.

The Court has outlined above the undisputed facts regarding Plaintiff's position vis-à-vis Nouvert's position. The Court concludes that these facts reflect that the jobs were not equal, just as Defendant contends. The jobs clearly are *different*, inasmuch as they varied substantially with respect to responsibilities, activities, contacts, department of employment, identity of supervisors, and status (or lack of status) as a supervisor of another employee. The Court realizes that such differences are not necessarily dispositive of whether these two performed "equal work," inasmuch as "work" can be "equal" even if it is not "identical" and perhaps even if it is substantially different. But such substantial differences certainly are relevant to whether the work was equal, especially where, as here, one draws the clear impression that Nouvet's duties and activities are not just different from Plaintiff's but elevated above Plaintiff's duties in the sense of his work being rather broader, more consequential, and more discretionary. And in the Court's view, ultimately two differences in particular clinch that the work of the two was not equal: the fact that Nouvet received significantly higher pay than Plaintiff and the fact that Nouvet supervised (and supervised actively, not just superficially per an organization chart) one other employee whereas Plaintiff did not.

This strikes the Court as a relatively easy call to make, despite the subjectivity of the notion of "equal work." Seeking to avoid this result, Plaintiff relies on the propositions that (i) even though Nouvet had a different job description calling for different duties, Plaintiff and Nouvet "performed the same duties"; and (ii) Nouvet "did not actually perform the duties detailed in his job description." For these two related propositions, Plaintiff cites, respectively, only paragraph

12 of her Declaration and 6 lines from page 205 of her deposition. But her statement in paragraph 12 is entirely conclusory, stating only that "[a]though we had different job titles, Mr. Nouvet and I performed the same or similar duties [during the purportedly relevant time period, i.e.,] from the time that he became Business Manager of the CRISALIS Core in July 2019 until my termination in December 2019." (Doc. No. 30-2 at 3). This kind of statement needs to be backed up by *facts*, because it is a mere (subjective) verbal characterization ("same or similar') of the outcome of the comparison at issue; the undersigned will not accept a self-serving, wholly subjective characterization like this unless it is shown to be reasonable by supporting factual matter—none of which is provided here. And similarly, the statement has not been shown to be made on personal knowledge, beyond the conclusory assertion of personal knowledge that (as discussed above) the Court must disregard. Although Plaintiff surely has personal knowledge of her own duties performed, she by no means would necessarily know all (or even anywhere close to all) of the duties that her comparator, Nouvet, performed; such knowledge must be shown and not merely presumed, and Plaintiff does nothing to show it.

Plaintiff's argument fails for this reason alone. It also fails alternatively because Plaintiff has done nothing to support her implication that the comparison of duties cannot be based on the duties that the comparator was supposed to perform rather than the duties that the comparator *actually* performed. The implication may be correct, but Plaintiff has not supported it. And there are valid reasons why the implication might be incorrect; arguably an employer should not be held liable when it paid a male more than a female based on what it *truly thought and expected in good faith* the male would be doing based on the male's job description, even though it turned out

(perhaps without the employer's contemporaneous knowledge)[26] that the male did not do all that he was supposed to do according to the job description.

Accordingly, the Court will grant summary judgment to Defendant on Count I.

## II. Counts II and IV: Retaliation in Violation of the Equal Pay Act and Title VII, Respectively

### A. Applicable Law

It is unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). The chapter in this provision relates specifically to the Fair Labor Standards Act, not the Equal Pay Act, and Section 206 is not included within that chapter. Nevertheless, courts have treated this provision as prohibiting retaliation related to complaints regarding alleged violations of Section 206(d)(1); the Tenth Circuit (in a case embraced by the Sixth Circuit, as noted below) has indicated that this is because "the Fair Labor Standards Act . . . is an [a]ct of which the Equal Pay Act is a part[.]" *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984). Thus, it does not matter that the EPA (29 U.S.C. § 206(d)(1) in particular) is not codified in the same "chapter" of Title 29 of the United States Code that 29 U.S.C. § 215(a)(3) is codified in; Section 215(a) is deemed to prohibit retaliation for certain kinds of complaining about alleged violations of the EPA (in particular, the kinds of complaining that rise to the level of "protected conduct" as that term is understood specifically in the context of retaliation claim, as discussed below).

---

[26] This suggests an additional shortcoming in Plaintiff's argument: Plaintiff does not establish that Defendant knew that Nouvet was doing less than his job description indicated he should do—thus leaving open the possibility that Defendant was providing Nouvet more pay than Plaintiff based on a good-faith belief (which could be relevant under the EPA, as far as Plaintiff indicates) that Nouvet was doing everything that his position required according to the job description.

The Court here has used the word "retaliation," but Section 215(a)(3) does not use that term. So it is important to note that the Court at times herein uses that word as shorthand for the kinds of employer actions (called "adverse actions," as discussed below) that cannot legally be taken against an employee due to the employee having engaged in "protected conduct."

A claim of retaliation under the EPA ("EPA-retaliation claim") potentially can exist even if Plaintiff never "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the EPA]," never "testified," and never "[wa]s about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). The Sixth Circuit explained why:

> In *Love*[], the Court held that "[t]he Act also applies to the unofficial assertion rights through complaints at work." [738 F.2d] at 387. The *Love* Court held that it is the assertion of statutory rights which is the triggering factor, not the filing of a formal complaint. *Id.* This view is in accord with other circuits.

*EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992). Embracing *Love*, the Sixth Circuit expressly rejected the view that the EPA "should be strictly construed and a retaliation claim allowed only for actions occurring after the complaining employee has instituted formal proceedings with the EEOC." *Id.*

In other words, a plaintiff can be deemed to have engaged in "protected conduct" even without having formally filed, formally testified, or been about to formally testify as contemplated by the words of Section 215(a)(3) itself. The notion of "protected conduct" is broader, covering complaints (and acts in furtherance of complaints) less formal and unassociated with a pending "proceeding" as such.

It is appropriate to analyze an EPA-retaliation claim (to the extent asserted under an indirect-evidence theory) under *McDonnell Douglas* burden-shifting framework. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021). The same is true, unsurprisingly, for a claim of retaliation in violation of Title VII ("Title VII-retaliation claim"). *See id.* Plaintiff relies solely on

an indirect-evidence theory, so the *McDonnell Douglas* theory is applicable to Count II and Count IV. And Plaintiff does not present any facts or legal argument in support of one count and not the other, but rather treats the analysis as the same as to both counts inasmuch as her argument for her Title VII retaliation-claim merely refers back to her argument for the EPA-retaliation claim. (Doc. No. 30 at 9). Defendant does likewise. (Doc. No. 26 at 19). And so will the Court below, referring to the law of Title VII-retaliation claims but treating such law as applicable also to EPA-retaliation claims.

Title VII makes it unlawful to retaliate against employees for engaging in protected conduct. *See* 42 U.S.C. § 2000e-3(a). "In order to establish a[n indirect-evidence] prima facie case of retaliation under Title VII, an employee must establish that (1) he or she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." [27] *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008); *accord Taylor*, 703 F.3d at 336 ("[Plaintiff] does not present direct evidence of retaliation, and, therefore, she must demonstrate by a preponderance of the evidence four elements: (1) she engaged in a protected activity under Title VII, (2) the exercise of protected rights was known by [her supervisor], (3) [her supervisor] took [an] adverse employment action against [Plaintiff], and (4) there was a causal connection between the adverse employment action and the protected activity."). The Sixth Circuit has noted that "the burden of establishing a *prima facie* case of retaliation is not onerous[.]" *Hatchett v. Health Care & Ret. Corp. of Am.*, 186 F. App'x 543, 550 (6th Cir. 2006) (internal quotation marks and citation omitted). Contributing to such lack of onerousness is the relatively broad notion of "adverse

---

[27] Below, when speaking in its own voice (as opposed to quoting another source), the Court refers to this fourth element for short as the "causal connection.")

employment action" in the context of retaliation claims in particular. *See Niswander*, 529 F.3d at 720 ("In contrast to Title VII's discrimination provision, the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that affect the terms, conditions, or status of employment, or those acts that occur in the workplace. The retaliation provision instead protects employees from conduct that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citation and some internal quotation marks omitted).

Protected conduct includes opposing any practice made unlawful by Title VII, or making a charge or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Reporting or complaining of racist conduct to management also constitutes protected conduct. *Fite v. Comtide Nashville, LLC*, 686 F. Supp. 2d 735, 753 (M.D. Tenn. 2010); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14C02325, 2016 WL 2927983, at *8 (M.D. Tenn. May 19, 2016).

Retaliation claims are subject to the *McDonell-Douglas* framework if there is no direct evidence of retaliation. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Thus, a plaintiff "may prove [subject to the defendant's rebuttal as to why it took the adverse employment action(s)] unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (quoting *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)).

B.  Analysis

Defendant claims that Plaintiff cannot raise a genuine issue as to the existence of the fourth element of an indirect-evidence prima facie case of retaliation, i.e., a causal connection. The Sixth

Circuit has previously explained what is required to establish a causal connection for purposes of an indirect-evidence *prima facie* case:

> To prove causation in a Title VII retaliation case, a plaintiff must show that the employee's protected activity was a "but for" cause of the employer's adverse action against her, meaning the adverse action would not have occurred absent the employer's desire to retaliate. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360, 133 S. Ct. 2517, 186 L.Ed.2d 503 (2013). In other words, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action" or otherwise engaged in protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). At the prima facie stage, this burden "is not onerous," and can be met through "evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights." *Id.*

*George v. Youngstown State Univ.*, 966 F.3d 446, 459–60 (6th Cir. 2020). "[T]he plaintiffs must, among other things, show 'a causal link' between a protected activity and the adverse employment action. That is, the evidence 'must be sufficient to raise an inference that the protected activity,' such as complaining to management about racial harassment, 'was the likely reason for the adverse action.'" *Fite*, 686 F. Supp. 2d at 753 (quoting *Wade v. Knoxville Utils, Bd.*, 259 F.3d 452, 463 (6th Cir. 2001)). Or, to put it only slightly differently, "[t]o establish a causal connection between the protected activity and the adverse employment action, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected activity." *Hatchett* 186 F. App'x at 550. Or to put it yet another way,

> In order to establish such a causal connection, a plaintiff must show some type of retaliatory intent. [The plaintiff] therefore had to establish that the true motivation for [the adverse employment action(s)] were not for the reasons given, but were instead based on the fact that he [engaged in protected conduct].

*Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016).

The Sixth Circuit has held that the causal connection can be inferred at the summary judgment stage when the adverse employment action and the protected conduct occur close in time:

> With regard to the last element, establishment of a "causal connection" between the protected activity and the adverse employment action, "[a]lthough no one factor is dispositive in establishing a causal connection, evidence . . . that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen*, 229 F.3d at 563. In fact, this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise. *See, e.g.*, *Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1116 (S.D. Ohio 1981) ("where there is no direct proof of a retaliatory motive, retaliation may be imputed if the timing of the retaliatory act is such as to allow an inference of retaliation to arise"), *aff'd sub nom. Brown v. Mark*, 709 F.2d 1499 (6th Cir.1983); *see also Nguyen*, 229 F.3d at 567 (noting that there are instances in which "evidence of temporal proximity alone would be sufficient to support" an inference of a causal link); *Parnell v. West*, No. 95–2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997) (noting that although "[a] time lag of seven months does not necessarily support an inference of a causal link[,] previous cases that have permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months").

> Various of our sister circuits have also accepted this concept. *See, e.g.*, *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110 (1st Cir.1988) (employee's discharge "soon after" engaging in protected activity "is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation"); *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir.1986) ("[c]ausation sufficient to establish a prima facie case of unlawful retaliation may be inferred from the proximity in time between the protected action and the allegedly retaliatory discharge"); *Burrus v. United Tel. Co. of Kansas*, 683 F.2d 339, 343 (10th Cir.1982) ("causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action"); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980) ("proof of causal connection can be established indirectly by showing that protected activity is followed by discriminatory treatment").

*DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004). In *DiCarlo*, the Sixth Circuit found that granting summary judgment on a retaliation claim was inappropriate when 21 days elapsed between the filing of an EEOC complaint and the plaintiff's termination; the court reasoned that

"the temporal proximity between the two events is significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Id.* at 421-422. The Sixth Circuit later clarified its holding in *DiCarlo* after confusion arose as to the circumstances under which plaintiffs must present evidence of causation beyond mere temporal proximity:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.
>
> The reason for this distinction is simple: if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (internal citation omitted). Therefore, in the Sixth Circuit, if an adverse employment action is "very close in time" after—i.e., occurs "immediately" upon—protected conduct, the temporal proximity by itself can suffice to raise a genuine dispute as to a causal connection in order to enable the retaliation claim to survive summary judgment, but if "some time" elapses the plaintiff must produce evidence of additional discriminatory conduct. Naturally, the devil may be in the details as to what does or does not fall within the quoted terms, which are rather subjective in nature.

 "The burden of proof at the [indirect-evidence] prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Dixon v. Gonzales*,

481 F.3d 324, 333 (6th Cir. 2007). What this means is that the real battle regarding causation often will occur not at the *prima facie* case (first) stage, but rather at the latter two stages.

Regarding a direct-evidence theory of retaliation, this Court previously has noted:

> For a plaintiff to prevail under a theory of direct evidence of retaliation, he would have to show both "blatant remarks" revealing the defendant's retaliatory intent and that the retaliatory intent was a motivating factor in the defendant's adverse employment action toward him. *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 235–36 (6th Cir. 2017). As indicated above, direct evidence is evidence that, if believed, requires the conclusion that unlawful discrimination (or, here, retaliation) was at least a motivating factor in the employer's actions. *McGee*, 2017 WL 587856, at *2. Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate (or retaliate) on the basis of some impermissible factor. *Publix*, 481 F. Supp. 3d at 697. Direct evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by discrimination or retaliation. *Id.* at 697-98. Importantly, the evidence must establish not only that the plaintiff's employer was predisposed to discriminate (retaliate), but also that the employer acted on that predisposition. *Id.* at 698.

*Kostic v. United Parcel Serv., Inc.*, 532 F. Supp. 3d 513, 537–38 (M.D. Tenn. 2021). The Court does not perceive that Plaintiffs have pointed to anything they claim to be direct evidence of retaliation, and so it examines only whether Plaintiffs' retaliation claims survive under an indirect-evidence theory.

Defendant does not attack Plaintiff's prima facie case by challenging her ability to raise a genuine issue that she engaged in protected conduct (the first element),[28] that Defendant was aware of that protected activity (the second element), or that she suffered an adverse employment action (the third element). Instead, Defendant challenges only Plaintiff's ability to raise a genuine issue

---

[28] Defendant does make the claim that "[a]lthough Plaintiff complained about pay disparity, there is no evidence that her complaints specifically alleged that she was paid unfairly due to her sex." (Doc. No. 26 at 13 n.3). But Defendant does not present this as a claim that her complaints (though concededly having been made) did not amount to protected conduct because they did not actual refer to gender disparity or gender-based discrimination; instead, Defendant appears to concede (for purposes of the Motion) that at least the particular complaining that Defendant does acknowledge—namely, "Plaintiff complain[ing] about Franklin Nouvet in July 2019" (Doc. No. 26 at 13)—constitutes "protected activity."

as to the fourth element, i.e., a causal connection. Nevertheless, to evaluate Defendant's challenge, the Court must determine what protected activity and what adverse employer action(s) actually are here at issue. That is because the required causal connection is a causal connection between protected activity and an adverse employer action.

Plaintiff's response to the Motion as a whole makes clear that she bases her claims of retaliation on only one adverse action, namely Defendant's termination of her employment; she (appropriately) concedes that "other actions such as being criticized for mistakes and misconduct and having her job threatened do not, in this particular case, constitute adverse actions."[29] (Doc. No. 30 at 9). And Defendant (understandably enough) does not address any other potential adverse actions, treating Plaintiff as relying exclusively on the single adverse action of termination.

As for protected conduct, however, Defendant and Plaintiff are at odds as to what it is upon which Plaintiff is relying. They both proceed as if the protected conduct consists of (and only of) Plaintiff's complaints to personnel of Defendant.[30] But they disagree as to the time period wherein such complaints were made. Defendant's whole argument as to a causal connection proceeds under the assumption that Plaintiff's protected conduct occurred at the latest in July 2019. It is based completely on this assumption that Defendant argues that Plaintiff is unable to establish temporal proximity between Plaintiff's complaints and her December 2019 termination of employment—

---

[29] Plaintiff states this in the section of her brief addressing *discrimination* in violation of Title VII, not the section addressing Title VII *retaliation*. And the concept of "adverse action" in the context of retaliation is broader than it is in the context of discrimination. But Plaintiff does not indicate that in the retaliation context she asserts any adverse actions that she does not assert in the employment context.

[30] Plaintiff and Defendant appear of like mind also as to whether Plaintiff is relying on Plaintiff's 2017 filing of a complaint with the Equal Employment Opportunity Commission (EEOC). Defendant implies, correctly, that such filing would constitute protected conduct but notes that Plaintiff has not claimed retaliation based on that particular protected conduct. (Doc. No. 26 at 13). And Plaintiff's response to the Motion omits any reliance on it, confirming that it is indeed not protected conduct on which Plaintiff is relying.

an inability that, according to Defendant, is fatal to Plaintiff's prima facie case because (again according to Defendant) Plaintiff cannot otherwise establish a causal connection.[31] (Doc. No. 26 at 13-14).

But this argument simply does not work unless Defendant shows that no reasonable jury could find that Plaintiff's protected conduct occurred at the latest in July 2019 (or perhaps somewhat later but still materially before December 2019). The burden falls on Defendant, as the summary-judgment movant, to show this (preliminarily, subject to rebuttal by Plaintiff) in order to support the particular argument it is making here. And Defendant has failed to do this. For example, in its statement of undisputed material facts (Doc. No. 27), Defendant does not address when it was that Plaintiff's complaints ceased; still less does Defendant assert therein that this occurred in July 2019 (or some somewhat later time still materially in advance of December 2019), let alone support such an assertion.

Accordingly, whatever success Defendant conceivably could have had on this argument, success eludes Defendant here because it simply has not supported (as required to meet its initial burden) its particular argument by showing a lack of adequate temporal proximity—or indeed showing what is the first date to be used in the temporal-proximity analysis. And as the temporal-proximity argument is the only one Defendant presents as to Counts II and IV, summary judgment will be denied to Defendant as to those Counts.

### III.    Count III: Discrimination in Violation of Title VII

In her response to the Motion, Plaintiff writes the following with respect to Count III:

> Plaintiff reiterates that Defendant engaged in unlawful employment actions when it paid her less than Franklin Nouvet for performing the same or similar duties as

---

[31] The Court is not convinced that Defendant has shown (as it must as part of its burden, extant due to the particular argument it is making, of making an initial showing of a lack of a genuine dispute that causal connection is lacking) that Plaintiff cannot establish causal connection except via temporal proximity, but the Court herein will assume arguendo that this is the case.

Plaintiff. However, Plaintiff concedes that other actions such as being criticized for mistakes and misconduct and having her job threatened do not, in this particular case, constitute adverse actions. Plaintiff's claims regarding pay disparity and retaliation which resulted in her termination can be sufficiently addressed in her claims for violations of the EPA for pay disparity and retaliation, and her Title VII claim for retaliation.

(Doc. No. 30 at 9). Plaintiff thus has effectively (and responsibly)[32] abandoned Count III, and so summary judgment will be granted Defendant as to Count III.

<u>CONCLUSION</u>

As to Count I, Defendant has met its initial burden under Rule 56 to show preliminarily that there is an absence of a genuine issue of material fact, and Plaintiff in response has failed to show otherwise. As to Count III, Plaintiff has expressly abandoned the claim. So summary judgment will be granted to Defendant on those two counts.

But as to Counts II and IV, Defendant has not met its initial burden under Rule 56 to show preliminarily that there is an absence of a genuine issue of material fact. So summary judgment will be denied Defendant on those two counts.

Accordingly, the Motion (Doc. No. 25) will be GRANTED IN PART AND DENIED IN PART.

An appropriate corresponding order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[32] Plaintiff (and, naturally, also her counsel) are to be commended for being intentional about the counts on which they do and do not see a need to persist; it is prudent for a party and her counsel to focus on what they perceive to be their best and/or primary theories and to jettison other theories where appropriate. Where a party makes that kind of strategic choice and makes that choice clear to the court, that is helpful to all concerned (including that party itself).